UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRAIG ALLEN PRATT,

    Plaintiff,

v.                                      Case No. 1:11-cv-540
                                      Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                   /

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on June 22, 1959 (AR 98).[1] Plaintiff alleged a disability onset date of February 22, 2007 (AR 98). He completed one year of college (AR 126), and had previous employment as an auto mechanic (AR 123). Plaintiff identified his disabling conditions as osteoarthritis, rheumatoid arthritis and back problems (AR 122). Due to these conditions, there are some days when he cannot use his hands and some days when he cannot walk (AR 122). The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on November 24, 2009 (AR 16-24). This decision, later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

2

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 22, 2007, and had met the insured status requirements of the Social Security Act through December 31,

2012 (AR 18). Second, the ALJ found that plaintiff had a severe impairment of rheumatoid arthritis (AR 18). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 20). In this regard, the ALJ reviewed Listings 1.02 (major dysfunction of a joint (due to any cause)) and 14.09 (inflammatory arthritis) (AR 20). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b) as follows:

> He can lift and / or carry 20 pounds occasionally and 10 pounds frequently; stand and / or walk (with normal breaks) six hours of an eight-hour workday; sit (with normal breaks) six hours of an eight-hour workday; occasionally climb, balance, stoop, kneel, crouch and crawl; work where he avoids concentrated exposure to extremes of cold and heat and to humidity; and frequently handle bilaterally.

(AR 20). The ALJ also found that plaintiff was unable to perform his past relevant work as a heavy, skilled auto mechanic (AR 23).

At the fifth step, the ALJ determined that plaintiff could perform the following work in the regional economy (defined as the state of Michigan): inspection/assembly (20,000 light, semiskilled jobs); and inspection/assembly (10,000 sedentary/semiskilled jobs) (AR 24). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from February 22, 2007 through November 24, 2009 (the date of the decision) (AR 24).

### III. ANALYSIS

Plaintiff has raised five issues (with sub-issues) in his appeal.

**A. The ALJ's decision was not based on substantial evidence because he failed to give proper weight to the findings and opinions of plaintiff's treating physicians.**

4

1.     **Plaintiff's treatment history**

On September 23, 2009, Dennis S. Van Wormer, D.O. gave an unsworn statement to plaintiff's attorney (AR 411-14). Dr. Van Wormer stated: that he was licensed to practice medicine in 1984; that he is Board Certified in Family Practice; that he first met plaintiff as a patient in 1990, at which time plaintiff was "a healthy guy"; that in about 2004, plaintiff developed rheumatoid arthritis; and that plaintiff's arthritis was treated by "a couple of specialists" (AR 411). The doctor further stated that "[m]ost of his care for that problem has been through them, but I certainly keep up to date with him on things" (AR 411).

One of the specialists, rheumatologist David D. Hamm, M.D., examined plaintiff on June 9, 2004 and determined that he could have rheumatoid arthritis (AR 257-62). After followup tests, Dr. Hamm concluded that plaintiff had rheumatoid arthritis (AR 262). Dr. Hamm prescribed medication and continued to treat plaintiff for that disease from July, 2004 through his alleged disability onset date of February 22, 2007 (AR 262-78). At an appointment on April 24, 2007, Dr. Hamm reported that plaintiff "drop[ped] something of a bombshell" by stating that he quit his job on February 26, 2007, that he was overworked, and that he was missing at least one day of work each week due to problems with his hands or feet (AR 278). Plaintiff reported 30 to 60 minutes of morning stiffness, but this had been going on until noon or 1:00 p.m. while he worked (AR 278). Plaintiff's joint examinations showed no sign of rheumatoid arthritis, acute or chronic, in his hands, wrists, elbows, shoulders, hips, knees, feet or ankles (AR 278). Plaintiff apparently intended to file for disability, although Dr. Hamm felt that "this is not a particularly good thing at age 47" (AR 278). Plaintiff continued to treat with Dr. Hamm through April 29, 2008 (AR 255). At that time plaintiff was just a little sore, but had a history of swollen joints at home (as verified by his wife) (AR 255).

Plaintiff advised Dr. Hamm that, in addition to the medication prescribed by Dr. Hamm, Dr. Van Wormer had prescribed Celebrex for the arthritis (AR 255). In this regard, the records reflect that Dr. Van Wormer was treating plaintiff's arthritis symptoms while plaintiff was seeing Dr. Hamm (AR 399-406).

On October 16, 2008, Dr. Van Wormer referred plaintiff to another rheumatologist, Jolene R. Key, M.D., for a second evaluation (AR 355-57). Dr. Key concluded that plaintiff had rheumatoid arthritis "by history," which was supported by a physical examination (AR 357). Plaintiff also reported "great difficulty with his activities of daily living" (AR 357). Dr. Key noted that while plaintiff had swelling of both hands, his extremities revealed no clubbing, cyanosis or edema; he was able to make 100% fists with effort; his pulses were palpable throughout; neurological examination showed no gross abnormalities in motor or sensory systems; and while plaintiff walked and moved slowly, he did not require an assistive device to ambulate (AR 355-57). In February 2009, Dr. Key noted that plaintiff had not had any significant flare ups (AR 381). Plaintiff reported that since starting a new medication (Enbrel) in November 2008, he was no longer having big flare ups but he still had some pain (AR 381, 384). The doctor also encouraged plaintiff to go on a healthy diet and increase his exercise (AR 382). By December 1, 2009 (approximately one week after the ALJ's decision), plaintiff reported that his new medication (Humira) was more effective than his previous medication (Enbrel) (AR 447).

### 2. Discussion

Plaintiff contends that his family physician, Dr. Van Wormer, should be considered a treating physician and that the doctor's opinions were supported by medical evidence. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's

6

alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2).

An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and*

7

*Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526.  Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source.  *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Contrary to plaintiff's contention, the ALJ did view Dr. Van Wormer as a treating physician, observing that "[e]xcept for Dr. Van Wormer's statement in Exhibit 17F, there are no treating medical source opinions contained in the record" (AR 22).  However, the ALJ did not consider Dr. Van Wormer as plaintiff's *primary* treating physician for the rheumatoid arthritis:

> On September 23, 2009, Dennis Van Wormer, M.D. [sic], stated that the claimant would likely miss more than four days a month from work because of his disease.  The doctor noted, however, that back in the days when claimant was working, he was not ever gone from work (Exhibit 17F/3).  The severity of Dr. Van Wormer's limitations is not borne out by the medical evidence of record.  There are many physical examinations by Dr. Hamm and Dr. Keyes [sic] wherein the claimant exhibited no significant swelling, joint redness or other typical clinical rheumatoid arthritis findings.  It is clear from the medical evidence of record that Dr. Van Wormer has not been the primary treating source of claimant's rheumatoid arthritis.  In view of the foregoing, the undersigned gives neither controlling nor significant weight to Dr. Van Wormer's opinion.

(AR 23).

In performing this evaluation of Dr. Van Wormer, the ALJ could defer to the opinions of the specialists.  *See* 20 C.F.R. § 404.1527(d)(5) ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist").  Here, it appears the ALJ deferred to the opinions expressed by the specialists, as well as the limitations identified by the specialists in their treatment notes, in discounting Dr. Van Wormer's opinion.  Although the ALJ could have provided a more detailed

articulation of his evaluation of Dr. Van Wormer, both the record and the regulations support the ALJ's decision not to give Dr. Van Wormer's opinion controlling or significant weight. Based on this record, a remand on this would not serve a useful purpose. *See, e.g., Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). Accordingly, the ALJ did not err in discounting Dr. Van Wormer's opinion.

> **B. The ALJ's decision is not supported by substantial evidence because he failed to properly follow 20 C.F.R. § 404.1529 and applicable case law in assessing Mr. Pratt's credibility.**

Plaintiff raises three sub-issues related to this claim.[2] Plaintiff's Brief at p. iii. First, plaintiff contends that his credibility is supported by the medical evidence. Second, plaintiff contends that his activities of daily living (ADLs) are consistent with his alleged symptoms of pain. Third, plaintiff contends that the ALJ failed to give proper weight to the Third Party assessment of plaintiff's wife, Ann Pratt.

> **1. The ALJ's credibility determination of plaintiff**

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility

---

[2] The court notes that plaintiff's cites 20 C.F.R. § 416.929 (the regulation applicable to a claim for Supplemental Security Income) rather than 20 C.F.R. § 404.1529 (the regulation applicable to DIB). Because plaintiff's claim involves DIB, the court will review plaintiff's claim under the latter regulation.

9

determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ evaluated plaintiff's credibility as follows:

The claimant testified that because of rheumatoid arthritis, he has no use of his dominant right hand, cannot lift any weight over one pound, and has difficulty holding on to an automobile steering wheel. He assessed that he can only stand 15 to 20 minutes or walk one-half block before experiencing foot pain. He reported that he can have major flare-ups of his rheumatoid arthritis one to two times per week. Although he stated that he was doing well on the date of the hearing, he had a four-day flare-up the prior Thursday through Sunday.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. Indeed, while in September 2009 Dr. Van Wormer recited the claimant's statement that there had been days when he spent the entire day in a recliner (Exhibit l7F/2), there is no history in the medical reports of record of the claimant's needing to recline seven hours a day for pain relief as he has contended.

The claimant quit work on his own on February 26, 2007. David Hamm, M.D., noted during an office visit of April 24, 2007 that the claimant dropped quite a "bombshell" when he announced that he quit because he was "way overworked" and that he had been missing a number of days of work. He related that since he quit

10

> work, he was able to deal with the few, little rheumatoid arthritis flare-ups that he was having (Exhibit 8F/24). There is no indication in the medical evidence that any treating medical source directed that the claimant stop working.
>
> \* \* \*
>
> The claimant has been prescribed only conservative care primarily consisting of medication therapy and the use of ice and heat. He has been prescribed various medications as set forth in Exhibits 6E/4 and 9E/2-3. The medical records reveal that the claimant's physical and depressive symptoms can be well controlled with medication. The claimant admitted at the hearing that if he does not take his Cymbalta, he can tell and will cry a good deal. In April 2007 he reported that with a temporary increase in Prednisone, his rheumatoid arthritis flare-up was resolved (Exhibit 8F/24).
>
> There is no indication that the claimant has had any significant side effects with his medication usage. His medication usage is closely monitored. If he has had any medication difficulties, it is logical to believe he would have reported so and that his treating physicians would have responded by altering his medication.

(AR 21-22).

There is no compelling reason to disturb the ALJ's credibility determination in this case. The ALJ found contradictions among the medical records, plaintiff's testimony, and other evidence. *See Walters*, 127 F.3d at 531. The ALJ's credibility determination is reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249. In addition, the ALJ accommodated plaintiff's rheumatoid arthritis in the RFC by including exertional limitations (light work and less than six hours each of standing, walking and sitting throughout the workday); postural limitations (only occasional climbing, balancing, stooping, kneeling, crouching and crawling); environmental limitations (avoiding concentrated exposure to extremes of cold, heat and humidity); and manipulative limitations ("frequently handle bilaterally") (AR 20).

Plaintiff also contests the ALJ's determination that his ADLs are inconsistent with a claim of disability. The ALJ addressed plaintiff's ADLs as follows:

11

> The claimant's daily activities suggest that he is capable of doing at least a limited range of light work. He testified that he is capable of mowing his grass with a riding lawn mower and assisting his wife in doing the laundry. While his children drive him places, he acknowledged that he has a valid driver's license and does drive. He is able to use his hands to manipulate and smoke cigarettes.

(AR 21-22).

While plaintiff may not have engaged vigorously in his activities, such endeavors are not indicative of an invalid, incapable of performing any type of work. *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and could "engage in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 358 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability). Based on the entire record of this case, the court concludes that the ALJ's credibility determination was supported by substantial evidence. There is no compelling reason for the court to disturb that determination. *Smith*, 307 F.3d at 379. Plaintiff's claim of error will be denied.

### 2. The ALJ's credibility determination of Ann Pratt

The ALJ reviewed a third-party function report completed by plaintiff's wife, Ann Pratt (designated at the hearing as Exhibit 4E) (AR 136-43). Mrs. Pratt described plaintiff' activities "from the time he/she wakes up until going to bed" to include the following: get up; take medications; put dog out; take an a.m. nap; watch television; go outside; sit in garage; watch

television; smoke; put dog out as needed; use ice and heat to relieve pain of flare ups and joint pain, eat when wife is available to get food (AR 136). She also stated that plaintiff: cannot dress himself (needs help with buttons, snaps and pulling up socks); needs help bathing (cannot raise arms to head); cannot shave or feed himself until his joint pain is manageable ("wife feeds him"); and may need held wiping in the toilet because his hands do not work (AR 137). In addition, when he is able to do so, plaintiff starts laundry and mows the lawn on a riding lawnmower (AR 138). Plaintiff also goes outside eight times a day to smoke (AR 138). Plaintiff's hobbies include watching television all of the time, swimming once per week, petting the dog and hunting when he is able (AR 139). When plaintiff's arthritis flares up, every movement causes severe pain and he can only walk when necessary, e.g., from his chair to the bathroom (AR 141). Finally, when plaintiff is in pain he cannot pay attention or follow instructions (AR 141).

>	The ALJ evaluated this report as follows:

>	The claimant's wife, Ann Pratt, has stated that the claimant will take care of the dog, watch television, and smoke. She has reported that the claimant needs some help dressing himself and caring for his personal needs (Exhibit 4E). The undersigned understands the witness's concern for the claimant. The claimant's spouse's comments are pertinent as third-party observations and are not the determining factor in the ultimate decision of whether the claimant is or is not disabled. The undersigned is persuaded, rather, by the objective medical findings, the comments of the acceptable medical sources, the claimant's treatment regimen, and his prescribed medications to conclude that the claimant is not as limited as has been suggested. The undersigned, therefore, does not assign significant weight to the witness's comments.

(AR 22).

>	The testimony of a lay witness "is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians." *Simons v. Barnhart*, 114 Fed.Appx. 727, 733 (6th Cir. 2004), citing *Lashley v. Secretary of Social Security*, 708 F.2d 1048, 1054 (6th Cir.1983).

13

Even if the court views Dr. Van Wormer as a treating physician, his records and statement - which are the most restrictive of the treating physicians - would not support the extreme limitations as reported by Mrs. Pratt. Accordingly, the ALJ could properly discount Mrs. Pratt's observations.

### C. The ALJ's findings on plaintiff's RFC and his finding that plaintiff can perform jobs existing in significant numbers in the regional economy are not supported by substantial evidence.

Plaintiff raises three sub-issues with respect to his RFC. Plaintiff's Brief at p. iii. First, plaintiff contends the ALJ failed to perform a function-by-function analysis as required by 20 C.F.R. § 404.1520a, SSR 98-6 and SSR 85-15. Second, the hypothetical question given to the vocational expert (VE), upon which the ALJ relied, failed to include plaintiff's well-documented impairments of record. Third, the ALJ should have given plaintiff full credibility and determined that he was disabled, consistent with the VE's testimony that all work would be precluded if he missed more than four days' work a month or if the restrictions found by Dr. Van Worker were given controlling weight. Plaintiff, however, fails to develop these arguments in his brief. Plaintiff's Brief at pp. 20-21. Rather, plaintiff simply announces his position: that the ALJ's decision was not supported by substantial evidence because he failed to consider all of plaintiff's impairments; that the ALJ failed to complete a function by function analysis in determining plaintiff's RFC; and that plaintiff "clearly suffered" from mental limitations, low back pain, side effects from his medication and lack of concentration. *Id.* "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to .

14

. . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court deems these arguments waived.

### D. The ALJ failed to identify other severe impairments

Plaintiff also contends that the ALJ failed to characterize his depression and degenerative disc disease as severe impairments at Step two of the sequential evaluation. Plaintiff's Brief at pp. 19-20. Although not included in his statement of errors, the court will address this alleged error. At step two of the sequential evaluation, the ALJ found that plaintiff had a severe impairment of rheumatoid arthritis (AR 18). The ALJ addressed plaintiff's mental impairment in detail, determining that his depression was nonsevere, because it did not cause more than a minimal limitation on plaintiff's ability to perform basic mental work activities and was adequately controlled with medication (Cymbalta) (AR 18-20). The ALJ did not specifically address plaintiff's claim of degenerative disc disease, but reviewed his ability to perform work activity based on the limitations posed by his rheumatoid arthritis (AR 18, 20-24). After finding the existence of a severe impairment, the ALJ proceeded to step three of the sequential evaluation.

A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* Here, the ALJ found that plaintiff had a severe impairment (rheumatoid arthritis) and continued with the disability evaluation. Accordingly, the

ALJ's failure to find depression and degenerative disc disease as severe impairments at step two of the is not error requiring reversal. *See Maziarz*, 837 F.2d at 244.

### E. The ALJ failed to review updated medical records

Plaintiff also contends that the ALJ should have relied on additional evidence obtained after the agency's non-examining consultant issued an RFC assessment on July 11, 2007 (AR 211-19) and that the ALJ should have obtained a consultative examination to consider medical evidence obtained after July 11, 2007. Plaintiff's Brief at pp. 16-17. Although not included in plaintiff's statement of errors, the court will address this alleged error. Contrary to plaintiff's contention, the ALJ did not adopt the agency's RFC assessment based upon plaintiff's condition as of July 2007. While the ALJ agreed with the agency consultant's RFC, the ALJ reached this conclusion after reviewing medical evidence generated after the issuance of the RFC (AR 18-23).

Finally, the ALJ was not required to obtain another consultative examination. An ALJ has the discretion to determine whether further evidence, such as additional examinations are necessary. *Hayes v. Commissioner of Social Security*, 357 Fed. Appx. 672, 675 (6th Cir. 2009), citing 20 C.F.R. §404.1517 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests"). "[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 214 (6th Cir. 1986). In other words, the regulations "do[] not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge

to make the disability decision." *Landsaw*, 803 F.2d at 214 (internal quotation marks omitted) (emphasis in original). *See also, Brock v. Chater*, 84 F.3d 726, 728 (5th Cir.1996) ("[a]n ALJ must order a consultative evaluation when such an evaluation is necessary to enable the ALJ to make the disability determination"). Here, the record, which reflected treatment by two rheumatologists and a family physician, was sufficient to enable the ALJ to make a disability determination. The ALJ was not required to consultative examination.

### IV.  CONCLUSION

The ALJ's determination of plaintiff's residual functional capacity, taken together with the testimony of the vocational expert, provides substantial evidence to support the ALJ's finding that there are a significant number of jobs in the relevant economy that plaintiff can perform. Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion shall be issued forthwith.


Dated:  September 14, 2012                        /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge